# VINCENT v. REEVES, JR., STATE EXAMINER

(No. 1850; April 20, 1934; 31 Pac. (2d) 680)

The cause was submitted for the defendant and appellant on the brief of *F. B. Sheldon, Jr.,* of Riverton.

For the plaintiff and respondent the cause was submitted on the brief of *George H. Paul,* of Riverton, and *G. J. Christie,* of Lander.

KIMBALL, Chief Justice.

The plaintiff and respondent at all times mentioned has been the owner of 20 shares of the capital stock of the Riverton State Bank which on August 19, 1932, became insolvent and passed into the hands of the State Examiner whose successor in office is the defendant and appellant.

In June, 1926, the bank was examined by the State Examiner to whom it appeared that the capital stock

was impaired. Acting under § 10-505, R. S. 1931, the Examiner notified the bank to make good the impairment. Pursuant to the notice and for the purpose of complying therewith, as provided by § 10-506, a 100 per cent assessment on the par value of outstanding stock was voted at a stockholders meeting held in October, 1926. In November, 1926, plaintiff paid the bank the full amount of the assessment on the stock owned by him. The bank then continued to operate and do a banking business until August, 1932, when it was taken over by the Examiner, as above stated.

Section 10-508, R. S. 1931, provides, among other things, that when the State Examiner has taken possession of the assets of an insolvent banking corporation and is of the opinion that it will become necessary in the course of liquidation of the bank to resort to the liability of shareholders as therein provided, he shall file with the county clerk a written statement which creates a lien on real estate in the county owned by the shareholder mentioned in the statement. This action is brought to cancel such a statement affecting real property owned by plaintiff. The judgment was for plaintiff and defendant appeals.

The argument in support of the judgment is that the statute enacted in 1888 (Sess. Laws, ch. 88, § 47), and re-enacted without change by the first sentence of § 87, ch. 157, Session Laws of 1925, providing for the shareholder's liability which the defendant seeks to enforce against the plaintiff in this case, was materially changed by an amendment of 1927 (Sess. Laws, ch. 100, § 3) now § 10-508, supra. Under the statute as amended, it is claimed that plaintiff as a shareholder assumed no liability beyond that which he has already discharged by paying the bank the purchase price of his stock and the amount of the assessment of 1926.

The statute of 1888, carried forward as section 5186 of C. S. 1920, read as follows:

"The shareholders of each and every banking association, savings bank and loan and trust company or association, organized under the provisions of this chapter shall be held individually responsible, equally and ratably and not one for another, for all contracts, debts and engagements of such company or association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such stock."

This section, with the rest of the chapter in which it was contained, was repealed by the new banking act of 1925, but section 5186 without change was re-enacted by the first sentence of section 87 of the new act (ch. 157, Sess. Laws, 1925). The re-enacted section, after setting forth the old law above quoted, defines the term shareholder; contains provisions intended to prevent a shareholder from escaping liability by transferring his stock within sixty days before insolvency or with knowledge of impending insolvency; provides for the filing of a notice of lien like that in the case at bar when the Examiner shall be of opinion that it will be necessary to resort to the liability "in order to make good the contracts, debts and engagements" of the bank; makes it the duty of the Examiner to release the lien when the shareholder deposits money equal to the amount of his stock at the par value of his shares "as security for his liability hereunder," and to return to the shareholder any excess of such deposit if his ultimate liability shall prove to be less than the amount deposited.

By the amendment of 1927 (§ 10-508, R. S.) the following was substituted for section 5186, C. S. 1920, as re-enacted by the first sentence of section 87 of the law of 1925:

"The shareholders of each and every banking asso-

ciation, savings bank and loan and trust company or association, organized under the provisions of this Act shall be held individually responsible, equally and ratably and not one for another, to the extent of the amount of their stock therein at the par value thereof, and such liability shall be deemed an asset of the insolvent bank, and upon insolvency shall become due and payable. The sole right of action for the collection of such liability shall be vested in the State Examiner."

The rest of the section is substantially the same as in the law of 1925.

The phrase "in addition to the amount invested in such stock," contained in the old law, is omitted by the amendment. Plaintiff's contention, sustained by the judgment is that the omission of this phrase from the amended law shows the legislative intention that the liability of the shareholder shall not exceed the amount invested in his stock. He relies on the principle that "a change in phraseology of an amendatory statute raises a presumption that a departure from the old law was intended." 25 R. C. L. 1051.

The presumption relied on is an aid in interpretation, but not necessarily controlling. It is resorted to for the purpose of discovering the intention of the legislature. It cannot prevent the consideration of other matters that may be of more importance in determining whether or not a change in the meaning of the law was intended. Changes in phraseology may result from a variety of causes, and it may often be clear that, notwithstanding the change, the law as amended has the same meaning as before amendment. Griggs v. Thulemeyer, 41 Wyo. 36, 282 Pac. 27.

The policy of protecting creditors of banks by imposing on shareholders a liability in excess of their investment in their stock is expressed in the laws of almost all jurisdictions. A law for that purpose has been in effect in Wyoming since 1888, as stated above.

A similar liability is imposed by federal law on the shareholders of a large number of national banks which do business in the state by the side of the state banks. If the legislature intended to abandon the established policy of subjecting shareholders of state banks to a superadded liability, we would expect that the statute would show the intention with irresistible clearness. See, Griggs v. Thulemeyer, supra, at p. 53. A statute for that purpose would probably be unconstitutional in so far at least as it purported to change the rights of those who were shareholders or creditors when the statute was passed. See Hawthorn v. Calef, 2 Wall. 10, 17 L. ed. 776.

The phrase "in addition to the amount invested in such stock," contained in the statute from 1888 to 1927, is found in the national act of 1864 (R. S. 5151) and in similar laws of several of the states. Its omission from the act of 1927 may have been caused by carelessness of the draftsman. If intentional, it may have been the result of a belief that the phrase was surplusage, and that its omission would work no change in meaning. This belief finds justification in the authorities. A statute of New York declared that shareholders "shall be liable to the extent of their respective shares of stock held in such company, and no further." In Briggs v. Penniman, 8 Cow. 387, it was held that this liability was in addition to the amount invested in the stock. It was said (p. 396):

"Surely the legislature did not mean to declare, that the stockholders should be liable, as they had already agreed to be liable, and as they were liable at common law. Something more was intended; and it is to my mind very clearly expressed, that the extent of the stock held by them should be the measure of their individual liability to creditors."

The same construction was given to a section of the Minnesota constitution which provided that "each

stockholder in any corporation (with certain exceptions) shall be liable to the amount of stock held or owned by him." Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. R. 626. Other cases, without any noticed exception, have given the same construction to similar language contained in constitutions, statutes and charters, although there was no express provision that the liability was in addition to the investment in the stock. Ohio Life Ins. & Trust Co. v. Merchants Ins. & Trust Co., 11 Humph. 1, 31, 33; Pettibone v. McGrew, 6 Mich. 441; U. S. Trust Co. v. U. S. Fire Ins. Co., 18 N. Y. 199, 218; Root v. Simock, 120 Ill. 350, 11 N. E. 339; McDonnell v. Alabama Gold L. Ins. Co., 85 Ala. 401, 5 So. 120.

It would, perhaps, be unreasonable to suppose that the law would have been amended merely for the purpose of dropping an unnecessary phrase from the language describing the shareholders' liability. That is not the case. The amendment makes other changes for a purpose that is fairly obvious. The amendment declares that the "liability shall be deemed an asset of the insolvent bank, and upon insolvency shall become due and payable." It then provides that the "sole right of action for the collection of such liability shall be vested in the State Examiner." These changes in the law were evidently for the purpose of making it clear that the State Examiner, as the statutory receiver, may and shall enforce the shareholders' liability. The necessity or advisability of such changes was probably suggested by cases which deny or doubt the right of a general receiver to enforce the liability in the absence of statute either authorizing him to bring an action for that purpose or making the liability an asset of the corporation. See Miller v. Amoretti, 26 Wyo. 170, 181 Pac. 170. The reason for these changes disappears if the liability is limited as plaintiff contends. We can-

not suppose that the legislature would have thought changes in the law were required to show that amounts due the bank for stock or for assessments thereon are assets to be collected by the State Examiner as the statutory receiver.

Several other provisions of section 10-508, if not the whole section, are meaningless or incongruous when applied to a liability limited to the amount invested in the stock. By section 10-107, fifty per cent. of the stock subscriptions must be paid in cash before the bank commences business, and the other fifty per cent. within six months from the issuance of the charter. Assessments under 10-506 are due and payable at a time fixed when the assessment is voted. Why is the liability imposed by section 10-508 made due and payable upon insolvency? Why is the amount of the liability fixed by the statute? Why should the Bank Examiner have the "sole" right of action for collection of the liability? These are only samples of many similar questions that might be asked. The provisions that suggest the questions show that the amendment was not intended to change the liability as imposed by former acts. The language of the present law has the same meaning it had before the amendment, and the omission of the phrase "in addition to the amount invested in such shares" must be attributed to some cause other than an intention to change the substance of the act.

If, as held above, a shareholder's liability under section 10-508 is the same as under previous statutes, we doubt that plaintiff intends to claim that his liability under that section was discharged or affected by payment in 1926 of the assessment then voted by the stockholders pursuant to the provisions of sections 10-505 and 10-506. If he makes that claim it is futile. The

assessment voted by the stockholders was for the purpose of making good the impaired capital, of restoring what had been lost, in order that the bank could continue to carry on its business, and payment of the assessment was in the nature of a further investment in the capital stock. Thereafter business was continued for more than five years. Under such circumstances it has been held repeatedly and uniformly that the amount paid on the assessment voted by the stockholders cannot be applied in satisfaction or reduction of the superadded statutory liability for the benefit of creditors at the time of insolvency. Delano v. Butler, 118 U. S. 634, 30 L. ed. 260, 7 Sup. Ct. Rep. 39; Duke v. Force, 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354; Citizens Bank v. Needham, 120 Kan. 523, 244 Pac. 7, 45 A. L. R. 1202; Andrews v. State ex rel. Blair, 124 Oh. St. 348, 178 N. E. 581, 83 A. L. R. 141.

The judgment is reversed, and the case remanded with instructions to enter judgment for defendant.

BLUME and RINER, JJ., concur.